UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EDWARD HARRISON,

                             Plaintiff,

        v.

LT. QUERNS, Hearing Officer,

                           Defendant.

**DECISION
and
ORDER**

**06-CV-0296F
(consent)**

_____

APPEARANCES:         EDWARD HARRISON, *Pro Se*
                        02-B-0929
                        Bare Hill Correctional Facility
                        Caller Box 20
                        181 Brand Road
                        Malone, New York  12953

                        ANDREW M. CUOMO
                        Attorney General, State of New York
                        Attorney for Defendant
                        MICHAEL A. SIRAGUSA
                        Assistant Attorney General, of Counsel
                        107 Delaware Avenue
                        Fourth Floor
                        Buffalo, New York  14202

## JURISDICTION

On October 5, 2006, the parties to this action consented to proceed before the undersigned.  The matter is presently before the court on Defendant's motion for summary judgment, filed May 30, 2007 (Doc. No. 16).

## BACKGROUND

Plaintiff Edward Harrison ("Plaintiff" or "Harrison"), commenced this civil rights action on March 8, 2006, in the District Court in the Northern District of New York,

alleging that while incarcerated at Five Points Correctional Facility ("Five Points" or "the correctional facility"), his rights to due process were violated by Defendant Department of Correctional Services ("DOCS") Lieutenant Mark Querns ("Defendant" or "Lt. Querns") with regard to a disciplinary hearing held on June 30, 2005.  Essentially, Plaintiff claims that Querns, acting as a disciplinary hearing officer, found Plaintiff guilty of violating several DOCS rules despite the complete absence of any evidence to support such finding, Complaint ¶ 7, First Cause of Action, and that Querns was biased. Complaint ¶ 7, Second Cause of Action.  On May 8, 2006, the case was transferred to the Western District of New York (Doc. No. 7).   Defendant's answer (Doc. No. 9) was filed on July 27, 2006.

On May 30, 2007, Defendant filed the instant motion for summary judgment (Doc. No. 16), along with supporting papers, including a Memorandum of Law in Support of Motion for Summary Judgment (Doc. No. 17) ("Defendant's Memorandum"), a Statement of Facts Not in Dispute (Doc. No. 18) ("Defendant's Statement of Facts"), and the Declaration of Lt. Mark Querns in Support of Motion for Summary Judgment (Doc. No. 19) ("Defendant's Declaration"), with attached exhibits A through C ("Defendant's Exh(s). __").  On July 20, 2007, Plaintiff filed in opposition to summary judgment a document titled "Motion Against Summary Judgment (Doc. No. 24) ("Plaintiff's Response").  Oral argument was deemed unnecessary.  Based on the following, Defendant's motion is GRANTED.

### FACTS[1]

On June 25, 2004, twenty-two inmates, including Plaintiff, engaged in a work stoppage in the mess hall at Five Points, and refused an order by DOCS Sergeant D. Whaley ("Sgt. Whaley") to cease the stoppage and return to work.  Although Plaintiff does not deny that he was involved in the work stoppage and failed to comply with Sgt. Whaley's order, Plaintiff maintains the work stoppage resulted from a request to speak with the watch commander.  Following the work stoppage, Sgt. Whaley issued an Inmate Misbehavior Report ("the Misbehavior Report"),[2] charging Plaintiff, then assigned to work in the front of the prison mess hall, was involved with the work stoppage, in violation of DOCS rules 104.12 (leading, organizing, participating, or urging others to participate in a work stoppage demonstration), 107.10 (interference with an employee), and 106.10 (refusing a direct order).

A Tier III disciplinary hearing ("the disciplinary hearing"), conducted by Lt. Querns was held on the charges beginning on June 28, 2004 and concluding on June 30, 2004. Witnesses testifying at the hearing on DOCS's behalf included Sgt. Whaley (Hearing Tr.[3] at 9-14), and Sergeant Mindy ("Sgt. Mindy") (Hearing Tr. at 22-24), while inmates Vega ("Vega") (Hearing Tr. at 16-20), and Juan Martin ("Martin") (Hearing Tr. at 20-21), testified on Plaintiff's behalf.  Corrections Officer ("C.O.") Conger ("Conger"), also testified on Plaintiff's behalf, although Conger's testimony was not recorded.  Following

---

[1] Taken from the pleadings and motion papers filed in this action.

[2] A copy of the Misbehavior Report is submitted as Defendant's Exh. A.

[3] References to "Hearing Tr." are to the page of the disciplinary hearing transcript, Defendant's Exh. C.

the hearing, Defendant, on June 30, 2004, issued a Hearing Disposition ("Hearing Disposition"),[4] finding Plaintiff guilty on all three charges, and sentenced to six months in the special housing unit ("SHU"), six months loss of recreation, packages, commissary and telephone privileges, and loss of two months of good time allowance. Defendant specified that the guilty determination was based on Sgt. Whaley's Misbehavior Report and testimony at the disciplinary hearing establishing that Plaintiff participated in the work stoppage. The Hearing Disposition also explained that the guilty finging applied regardless of whether Plaintiff merely participated in, or was an instigator of, the work stoppage.

Plaintiff appealed the Hearing Disposition which, on April 29, 2005, was reversed for "failure to interview a requested [inmate] employee witness who could have provided relevant testimony." Defendant's Exh. B at 11. Despite this stated ground for reversal, Defendant maintains, and Plaintiff does not dispute, that the stated reason for the hearing decision reversal refers to the fact that the portion of the disciplinary hearing at which Conger testified was not recorded. Plaintiff asserts that Conger's testimony establishes that Plaintiff was not a leader of the work stoppage. This action followed.

## DISCUSSION

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) and (b); *Celotex*

---

[4] A copy of the Hearing Disposition is submitted as Defendant's Exh. B at 1-2.

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322. Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).

In the instant case, Defendant argues in support of summary judgment that he is qualifiedly immune from liability on Plaintiff's claims and, alternatively, that the claims are without merit.  Defendant's Memorandum at 8-10.  Qualified immunity shields law enforcement officials who perform discretionary functions from liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable prison official would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982); *Washington Square Post No. 1212 v. Maduro*, 907 F.2d 1288, 1291 (2d Cir. 1990).  Even if the right at issue was clearly established, if it was objectively reasonable for the defendant to believe, based on the facts of the case, that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity. *Saucier v. Katz*, 533 U.S.194, 201-02 (2001); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Lowth v. Town of Cheektowaga*, 82 F.3d 563,

568-69 (2d Cir. 1996); *Van Emrik v. Chemung County Dep't of Soc. Servs.*, 911 F.2d 863, 865-66 (2d Cir.1990); *Robison v. Via*, 821 F.2d 913, 920-21 (2d Cir. 1987).  "The availability of the defense depends on whether a reasonable officer could have believed his action to be lawful, in light of clearly established law and the information he possessed." *Weyant v. Okst*, 101 F.3d 845, 858 (2d Cir.1996) (internal quotation marks omitted).

A right is clearly established if (1) it was defined with reasonable specificity, (2) its existence has been affirmed by either the Supreme Court or the relevant court of appeals, and (3) a reasonable defendant official would have understood under the existing law that his acts were unlawful.  *Brown v. City of Oneonta, N.Y. Police Dep't*, 106 F.3d 1125, 1131 (2d Cir. 1997).  If, however, it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may be entitled to qualified immunity.  *Robison*, 821 F.2d at 920-21.

A defendant is entitled to summary judgment based on qualified immunity if the court finds that the asserted rights were not clearly established, or "if the defendant adduces[s] sufficient facts [such] that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to the plaintiff. . . could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not violate a federally protected right." *Robison*, 821 F.2d at 921 (internal quotation omitted).  Stated another way, a defendant is entitled to qualified immunity under the objectively reasonable standard if "officers of reasonable competence could disagree" on the legality of the defendant's actions.  *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995).

Where, however, the objective reasonableness of an officer's actions depends on disputed facts, summary judgment is properly denied.  *Rivera v. United States*, 928 F.2d 592, 607 (2d Cir. 1991); *Brawer v. Carter*, 937 F.Supp. 1071, 1082 (S.D.N.Y. 1996). Provided that no factual issues are disputed, the application of qualified immunity to the facts is a question of law for the court to decide.  *Finnegan v. Fountain*, 915 F.2d 817, 821 (2d Cir. 1990).  Accordingly, the court must evaluate whether Defendant's actions under the relevant circumstances, and in light of clearly established law in existence as of June 30, 2004, violated Plaintiff's constitutional right to due process.

As of June 30, 3004, the date the disciplinary hearing concluded, due process with regard to prison disciplinary hearings required only that "some evidence" in the record support the disciplinary hearing officer's decision.  *Walpole v. Hill*, 472 U.S. 445, 455 (1985).  As relevant to this instant case,

> [t]his standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced. . . .'  Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id*. at 455-46 (quoting *United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103,106 (1927)).

Here, the undisputed facts establish that Defendant relied on both the Misbehavior Report and the testimony of the disciplinary hearing witnesses in determining that Plaintiff had, in fact, engaged in the June 26, 2005 work stoppage at Five Points' mess hall.  *See* Misbehavior Report (describing how, following work stoppage incident, the inmates involved in the work stoppage were identified and processed, including Plaintiff, who was brought into the hallway and identified as one of

7

the "instigators," and overheard by Conger as stating "[i]f you want me to tell them to return to work, I will, and they will go back to work."  Misbehavior Report at 2.  This is consistent with Plaintiff's own statements during the disciplinary hearing that there was a work stoppage, following which the inmates, including Plaintiff, wanted to return to work, but that Conger prevented the inmates from returning to work.  Hearing Tr. at 11. Under these circumstances, it was reasonable for Defendant to determine that, notwithstanding Conger's testimony, Plaintiff had engaged in the work stoppage and refused Sgt. Whaley's order, whether as an instigator as charged in Sgt. Whaley's misbehavior report, or as a mere participant, consistent with Plaintiff's own disciplinary hearing testimony, was based on "some evidence" and, as such, did not violate Plaintiff's constitutional right to due process.

It is also significant that federal due process for prisoners does not require that an inmate disciplinary hearing be recorded.  *See Dixon v. Goord*, 224 F.Supp.2d 739, 744 (S.D.N.Y. 2002) (alleged defect in taping of disciplinary hearing does not rise to a constitutional violation).  Rather, the minimum requirements of due process for an inmate disciplinary hearing as set forth by the Supreme Court, include only that (1) advance written notice of the charges be provided to the inmate; (2) the fact finder prepare a written statement describing the evidence relied upon and the reasons for the hearing determination; and (3) the inmate be permitted to call witnesses and present documentary evidence at the proceedings.  *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).  In this case, the record establishes, and Plaintiff does not dispute, that each of these requirements have been met.  Nor does Plaintiff contest that he refused to comply with Sgt. Whaley's order to cease the work stoppage and return to work, a separate

8

violation sufficient to support Defendant's determination against Plaintiff, not dependent on Conger's testimony arguably consistent with Plaintiff's 'defense' that he did not instigate the work stoppage.

Nor does Plaintiff present anything in support of his assertion that Querns was, as a hearing officer, biased other than conclusory statements which, absent any evidentiary support, are insufficient to avoid summary judgment. *Nicholas v. Miller*, 189 F.3d 191, 194 (2d Cir. 1999) (observing that inmate's conclusory assertions in affidavit generally insufficient to avoid summary judgment). The record thus establishes that Defendant is qualifiedly immune from liability on both Causes of Action.[5]

## **CONCLUSION**

Based on the foregoing, Defendant's motion for summary judgment (Doc. No. 16) is GRANTED; the Clerk of the Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        February 21, 2008
                    Buffalo, New York

---

[5] The finding that Defendant is qualifiedly immune from liability on Plaintiff's claims renders it unnecessary to discuss the merits of the claims.

**Any appeal of this Decision and Order must be taken to by filing a notice of appeal within 30 days of the filing of this Decision and Order pursuant to Fed. R. App. P. 4(a)(1) & (c).**